OPINION OF THE COURT
Hilda G. Schwartz, J.
Plaintiff Touche Ross & Co. (Touche Ross) moves for a preliminary injunction pendente lite enjoining defendant Manufacturers Hanover Trust Company (Manufacturers) from making any payment under a certain letter of credit, No. 148535, issued by defendant Manufacturers in favor of defendant Bank Saderat in the amount of $400,000, including specifically enjoining Manufacturers from setting up a blocked account pursuant to regulations issued by the Department of the Treasury of the United States (Treasury Regulations) and for an order *439 granting plaintiff leave to serve a supplemental complaint pursuant to CPLR 3025 (subd b).
The facts are that Touche Ross, a partnership of certified public accountants in June, 1977 entered into a contract with the Imperial Iranian Government, Ministry of War, to audit, examine and review the financial aspects of certain military contracts which various American contractors were performing for the Imperial Iranian Government.
The Imperial Iranian Government, at the time of entry into the contract, was the lawful and duly constituted government of Iran. However, in the final days of 1978, the political situation in Iran became volatile. The Imperial Government fell and was replaced by the Government of the Islamic Republic of Iran which quickly demonstrated the intention to put to an end the longstanding political and commercial contacts which had existed between the United States and Iran. In November, 1979 a group of Iranians seized the American Embassy in Teheran and took and still as of this date retain as hostages a number of American diplomatic and military personnel. In addition, many commercial enterprises in which financial interests were held by Americans were apparently nationalized by the new regime.
In response to these political and diplomatic developments, the President issued Executive Order No. 12170 (44 Fed Reg 65729), which provides:
“Pursuant to the authority vested in me as President by the Constitution and laws of the United States including the International Emergency Economic Powers Act, 50 U.S.C.A. sec. 1701 et seq., the National Emergencies Act, 50 U.S.C. sec. 1601 et seq. and 3 U.S.C. sec 301,
“I, Jimmy Carter, President of the United States, find that the situation in Iran constitutes an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and hereby declare a national emergency to deal with that threat.
“I hereby order blocked all property and interests in property of the Government of Iran, its instrumentalities and controlled entities and the Central Bank of Iran *440 which are or become subject to the jurisdiction of the United States or which are in or come within the possession or control of persons subject to the jurisdiction of the United States.
“The Secretary of the Treasury is authorized to employ all powers granted to me by the International Emergency Economic Powers Act to carry out the provisions of this order.
“This order is effective immediately and shall be transmitted to the Congress and published in the Federal Register.”
In April, 1980, the President severed all diplomatic ties with Iran. The President’s executive order blocking all Iranian assets in this country is still in effect, and the diplomatic ties with Iran remain severed.
Pursuant to the contract between Touche Ross and' the Iranian Government, Touche Ross is owed approximately $875,000, plus interest, for services rendered under the contract.
To assure performance of the contract by Touche Ross, it was agreed that Touche Ross would provide a performance guarantee between defendant Bank Saderat and the Imperial Government, Ministry of War, in an amount equal to 10% of the contract price. The contract price was $4,000,000; the guarantee was in the amount of $400,000.
Pursuant to the guarantee, Bank Saderat agreed to pay the Imperial Government, Ministry of War, up to the amount of $400,000 upon receipt of the statement of the Imperial Government, War Ministry, that Touche Ross had “failfed] to carry out and execute each and every one of its commitments resulted from the above contract”. To support the guarantee, Touche Ross arranged for the issuance of a letter of credit by defendant Manufacturers in the amount of $400,000, whereby if Bank Saderat was required to pay the $400,000 to the Imperial Government, Ministry of War, pursuant to the guarantee, Manufacturers would pay Bank Saderat $400,000.
On or about July 17, 1977, Manufacturers issued the letter of credit for the account of Touche Ross. The letter *441 of credit was payable upon presentation of a sight draft and documentation consisting of either Bank Saderat’s statement signed by one of its officers or Bank Saderat’s tested telex informing Manufacturers that Bank Saderat, pursuant to the guarantee, had made payment to the Imperial Government, Ministry of War.
Section 6.2 of the contract between Touche Ross and Iran provides:
“In the event of Force Majeure when the performance of this Contract becomes impossible the afflicted party must inform in writing to the other party of the occurence of the said event or events, and also mention in his letter the estimated duration of time during which these circumstances will continue.
“Then, both parties of this Contract must consult and exchange views with each other to find ways to deal with such events.
“However, if within three (3) months from the date of requesting for negotiations by either party, a mutually agreeable solution is not found, each party can, on his opinion, cancel the Contract by giving a written notice to the other party.”
Force majeure is defined in the contract to include, but is not limited to: “Flood, epidemics, earthquake, War, cases which are generally accepted by international practice as Force Majeure.”
Revolution and political upheaval are generally accepted by international practice to be force majeure.
By notice of invocation of force majeure dated April 10, 1979, Touche Ross informed the Ministry of Defense of the then Provisional Islamic Government of Iran, that it was invoking the force majeure clause of the contract. Three months then elapsed without the parties agreeing upon a solution.
Thereafter, by notice dated July 17, 1979, Touche Ross canceled the contract pursuant to the force majeure clause.
Section 7.4 of the contract provides: “In the event the Contract is cancelled due to Force Majeure or the Em *442 ployer cancels the Contract for any reason except the Contractor’s negligence, all Bank Guarantees of good performance of work will be immediately released.”
As a result, the guarantee has been released, and no legitimate call could be made on the guarantee or the letter of credit. Nevertheless, Touche Ross was advised by letter dated August 28, 1980, that the Islamic Republic of Iran has sought and/or received payment of the guarantee and that Bank Saderat has made a demand on Manufacturers for payment of $400,000 under the letter of credit.
As all financial institutions in Iran, including Bank Saderat, have been nationalized, Bank Saderat is owned by the Islamic Republic of Iran. Bank Saderat could not have legitimately paid on the guarantee, as Bank Saderat would be simply paying itself. Therefore, any call on the letter of credit would be fraudulent.
Pursuant to the President’s Executive Order No. 12170 (44 Fed Reg 65729), the Department of the Treasury promulgated and issued Iranian Assets Control Regulations which provided, inter alla, that a domestic bank, the issuer of a standby letter of credit (here Manufacturers), may not pay the proceeds of a letter of credit to Iran, and that the domestic bank is to pay the proceeds of the letter of credit into a blocked account. The blocked account is to be in the name of the Iranian entity (here Bank Saderat).
The treasury regulations, specifically section 535.508, are unclear as to whether placing money in a blocked account is tantamount to payment. Manufacturers’ establishment of such an account in favor of Bank Saderat might be construed as a waiver by Touche Ross of its right to later contest payment under the letter of credit.
Upon the termination of the President’s freeze order, the funds could be automatically transferred, causing Touche Ross to lose its $400,000.
In addition, as the blocked account will be established in the name of Bank Saderat, an entity controlled by the Iranian Government, litigants in other cases against Iran will proceed to attach the blocked account. As the *443 total amount of claims against Iranian assets in the United States is greater than the amount of Iranian assets in the United States, once the blocked account is attached, Touche Ross could lose any possible chance of recovering its own money.
Plaintiff Touche Ross has established its likelihood of eventual success on the merits at trial, irreparable injury absent the injunction and a balancing of the equities in its favor.
Plaintiff’s motion is granted in all respects. Plaintiff is directed to serve its supplemental complaint within 10 days after publication of the order to be settled herein.